# EXHIBIT 1



FILED
MARIE HIRST COURT CLERK
CANADIAN COUNTY, OKLAHOMA

DEC 3 0 2021

BY _____
DEPUTY

IN THE DISTRICT COURT IN AND FOR CANADIAN COUNTY
STATE OF OKLAHOMA

| | |
|---|---|
| STEVENS TRUCKING CO., a domestic corporation,<br><br>    Plaintiff,<br><br>v.<br><br>AMAZON.COM SERVICES, LLC, a foreign limited liability company, and AMAZON LOGISTICS, INC., a foreign corporation,<br><br>    Defendants. | Case No. CJ-2021-577<br><br>JURY TRIAL DEMANDED<br><br>ATTORNEY'S LIEN CLAIMED<br><br>**PAUL HESSE** |

## PETITION

**COMES NOW** Plaintiff Stevens Trucking Co. ("Plaintiff" or "Stevens Trucking") and for its claims against Defendant Amazon.com Services LLC ("Amazon Services") and Defendant Amazon Logistics, Inc. ("Amazon Logistics"), collectively the "Defendants," hereby alleges and states the following:

**I. PARTIES, JURISDICTION & VENUE**

1. Stevens Trucking is a family-owned and operated trucking and freight business, incorporated under the laws of the state of Oklahoma and authorized to do business in Oklahoma. Its principal place of business is located in Canadian County, Oklahoma at 3715 S. Radio Road, El Reno, Oklahoma 73036.

2. Amazon Services is a foreign limited liability company, wholly-owned, directly or indirectly, by Amazon.com, Inc. Amazon Services is licensed to do business in the State of Oklahoma and may be served at Corporation Services Company, 10300 Greenbriar Place, Oklahoma City, Oklahoma 73159.

3. Amazon Logistics is a foreign corporation organized under the laws of the state of

Delaware and is a wholly-owned, directly or indirectly, subsidiary of Amazon.com, Inc. It is not listed by Oklahoma Secretary of State as licensed to do business in the State of Oklahoma, but upon information and belief it regularly does business in the State of Oklahoma.

4. This court has general jurisdiction over all of the defendants because they generally avail themselves of the pleasure of doing business in the state of Oklahoma. There is also specific jurisdiction because the torts complained of occurred, in part or in whole, in the State of Oklahoma.

5. Venue is proper in this court because the plaintiff is domiciled in Canadian County and all of the defendants are non-residents of the State of Oklahoma. 12 O.S. § 187.

## II. FACTS

6. Plaintiff re-pleads and incorporates paragraphs 1-5 above.

7. Defendants are entities wholly-owned and controlled by Amazon.com Inc. and provide transportation and logistical services to Amazon.com, Inc., or themselves, to move products from Amazon.com Inc. or their own suppliers to Amazon.com, Inc. or their own customers. Upon information and belief, in committing the actions complained of below, or in their omissions, the Defendants have acted in concert with one another to satisfy the needs of their parent, Amazon.com, Inc.

8. At all relevant times Stevens Trucking has or had agreements with its own customers ("Stevens Trucking Customers") who are or were suppliers to Amazon.com or the Defendants to transport freight from Stevens Trucking Customers to Defendants at Defendants' locations, including those in Oklahoma City and Tulsa, Oklahoma. These locations are also known as Amazon Fulfillment Centers.

9. Defendants required that when a Stevens Trucking tractor and trailer arrived at an

Amazon Fulfillment Center that the Stevens Trucking driver would leave the trailer at the site. Amazon would then unload the freight from the trailer and park the empty trailer in a lot at the Amazon Fulfillment Center for a Stevens Trucking driver to pick up. The custom, practice and procedure was that when another Stevens Trucking driver delivered the next trailer and freight, he or she would take away an empty Stevens Trucking trailer from the Amazon Fulfillment Center.

**10.** Stevens Trucking was not responsible for unloading the freight from its trailers. In fact, the Defendants prohibited Stevens Trucking drivers from doing so. Defendants did not have the permission or right to use any Stevens Company trailers for the shipment of freight from the Amazon Fulfillment Centers.

**11.** The depositing of Stevens Trucking's trailers with Defendants constituted a bailment for the limited purpose of moving the trailers to an unloading area, unloading the freight in the trailers, and moving the trailers to an area for Stevens Trucking to recover the trailers and haul from Defendants' property.

**12.** In the fall of 2020, demand for closed freight trailers increased greatly as the United States saw the economy recovering from the many of the shutdowns due to the COVID-19 pandemic. Since the fall of 2020, there has been a worsening shortage of closed freight trailers to meet demand in the United States. By mid-2021, the United States has been experiencing a supply chain crisis which has caused an increase in the value of closed freight trailers.

**13.** Upon information and belief, and without actual or apparent authorization, on multiple occasions Defendant used trailers of Stevens Trucking, and others, to haul freight from the Amazon Fulfillment Centers to other locations for the ultimate delivery of items to Amazon.com customers. Upon information and relief, Defendants often employed third-party

truckers or trucking companies to pull Stevens Trucking's trailers without authorization.

14. Beginning in October 2020, contrary to the terms of the bailment, the Defendants began stealing Stevens Trucking's trailers and converting them to their own use to ship freight from the Amazon Distribution Centers in Oklahoma. Upon information and belief, Defendants loaded freight onto Stevens Trucking trailers, and had tractors other than Stevens Trucking's tractors, driven by drivers who were not Stevens Trucking drivers, move the trailers with freight to destinations for the purpose of furthering the business of Defendants and its owner and affiliates. Defendants did all this without any right to do so and without the actual or apparent consent or permission of Stevens Trucking.

15. Upon information and belief, the Amazon Relay Operations Center or "ROC," which is controlled by one or more of the Defendants, approved the unauthorized use of Stevens Trucking trailers due to trailer shortages in the Amazon supply chain network. All of this was done without an interchange agreement, which was required.

16. Defendants consciously and intentionally ignored or disregarded this requirement when it hired third-party motor carriers to haul Stevens Trucking's trailers from its facilities.

17. The following instances are ones of which Stevens Trucking has obtained actual knowledge.

### Trailer Nos. 531011 and 53702

18. On or about October 13, 2020, Stevens Trucking delivered its trailer, numbered 531011, with freight from a Stevens Trucking customer to an Amazon Fulfillment Center located at 9201 S. Portland Ave in Oklahoma City known as "OKC1" (and hereinafter "OKC1"). The trailer bore the distinctive and conspicuous mark of "Stevens Trucking." The trailer was decoupled from the Stevens Trucking tractor and left for the sole purpose of unloading by Defendants and

subsequent pickup by another Stevens Trucking tractor.

**19.** On or about October 15, 2020, Stevens Trucking delivered its trailer, numbered 53702, with freight from one of its customers to OKC1 in Oklahoma City. The trailer bore the distinctive and conspicuous mark of "Stevens Trucking." The trailer was decoupled from the Stevens Trucking tractor and left for the sole purposes of unloading by Defendants and subsequent pickup by another Stevens Trucking tractor.

**20.** By email dated January 27, 2021, Defendants admitted that Stevens Trucking trailers, 531011 and 53702, were present at the Amazon Distribution Center in Wilmer Texas, known as DAL9, further confessing that "It appears as if these trailers were brought here improperly by other Amazon facilities."

**21.** In a subsequent email that same day, Defendants informed Stevens Trucking that trailer 531011 had come from OKC1 and entered "DALA gate" early morning on October 16, 2020.

**22.** In the same email, Defendants informed Stevens Trucking that trailer 53702 entered DALA gate just after midnight on October 17, 2020, and that the load had originated from "FTW6".

**23.** Defendants did not return these trailers to Stevens Trucking until February 15, 2021, when Stevens Trucking had to pick them up at Defendants' "OKC 5" facility.

### Trailer No. 53785

**24.** On or about October 15, 2020, Stevens Trucking delivered its trailer 53785 with freight from one of its customers to Defendants' OKC1 facility. The trailer bore the distinctive mark of Stevens Trucking. The trailer was decoupled from the Stevens Trucking tractor and left for unloading by Defendants and subsequent pickup by another Stevens Trucking tractor.

25. Upon information and belief, Defendants intentionally loaded trailer and directed a third-party motor carrier to utilize the trailer even though Defendants had no permission from Stevens Trucking or authority to do so and the third-party motor carrier also did not have permission from Stevens Trucking or authority to do so.

26. On or about February 10, 2021, Defendants informed Steven Trucking that they had trailer 53785 at their "FTW2" facility in Coppell, Texas and requested that Stevens Trucking pick it up. Stevens Trucking insisted that either Amazon or someone with whom Stevens Trucking had an interchange agreement bring the trailer back to Oklahoma City.

27. Over the next few weeks, Stevens Trucking sent many emails to Defendants inquiring about the whereabouts of trailer 53785 and when it could expect the trailer would be returned. On March 10, 2021, a Stevens Trucking driver found that trailer at the FTW2 facility but also discovered that the trailer was significantly damaged.

28. Defendants finally repaired the damaged trailer and returned it to Oklahoma City on or about March 25, 2021. The damage to the trailer, although repaired to permit continued use, diminished the market value of the trailer.

**Trailer Nos. 531169 and 5326**

29. On or about October 17, 2020, Stevens Trucking delivered its trailer 531169 with freight from one of its customers to Defendants' OKC1 facility. The trailer bore the distinctive and conspicuous mark of "Stevens Trucking." The trailer was decoupled from the Stevens Trucking tractor and left for unloading by Defendants and subsequent pickup by another Stevens Trucking tractor.

30. On or about December 2, 2020, Stevens Trucking delivered its trailer 5326 with freight from one of its customers to Defendants' OKC1 facility. The trailer bore the distinctive and

conspicuous mark of "Stevens Trucking." The trailer was decoupled from the Stevens Trucking tractor and left for unloading by Defendants and subsequent pickup by another Stevens Trucking tractor.

**31.** Defendants have knowingly and maliciously converted both of these trailers for its own financial gain.

**32.** Stevens Trucking has made repeated demands to Defendants for the return of these trailers. Defendants have stated that they have been unable to find these trailers, which remain missing even though they were left in the custody and care of Defendants on or about October 17, 2020 and December 2, 2020, respectively.

### Trailer No. 53116

**33.** On or about October 21, 2020, Stevens Trucking delivered its trailer 53116 with freight from one of its customers to Defendants' OKC1 facility. The trailer bore the distinctive and conspicuous mark of "Stevens Trucking." The trailer was decoupled from the Stevens Trucking tractor and left for unloading by Defendants and subsequent pickup by another Stevens Trucking tractor.

**34.** Upon information and belief, Defendants intentionally loaded trailer 53116 and directed a third-party motor carrier to utilize the trailer even though Defendants had no permission from Stevens Trucking or authority to do so and the third-party motor carrier also did not have permission from Stevens Trucking or authority to do so.

**35.** Upon information and belief based upon admissions in email by Defendants to Stevens Trucking, trailer 53116 was taken to the Denver, Colorado area where it arrived on October 29, 2020, unloaded, and then loaded with additional freight and taken to Defendants' facility LAS1 in the Las Vegas, Nevada. Defendants had no permission from Stevens Trucking

or authority to do so and a third-party motor carrier also did not have permission from Stevens Trucking or authority to used trailer 53116 for any of these trips.

36. Defendants finally hauled this trailer to Thornton, Colorado where Stevens Trucking had to send a driver and tractor to recover its property, trailer 53116. Stevens Trucking recovered its trailer on June 7, 2021, over 8 months and over 600 miles from when and where it had entrusted the trailer in Defendants' care for the limited purpose of Defendants unloading its freight.

**Trailer Nos. 531252, 53740, and 53253**

37. On or about June 21, 2021, Stevens Trucking delivered its trailer 531252 with freight from one of its customers to Defendants' OKC1 facility. The trailer bore the distinctive and conspicuous mark of "Stevens Trucking." The trailer was decoupled from the Stevens Trucking tractor and left for unloading by Defendants and subsequent pickup by a Stevens Trucking tractor.

38. Upon information and belief, Defendants intentionally loaded trailer 531252 and directed a third-party motor carrier to utilize the trailer even though Defendants had no permission from Stevens Trucking or authority to do so and the third-party motor carrier also did not have permission from Stevens Trucking or authority to do so. Upon information and belief, the trailer was taken with freight to Defendants DAL9 facility in Wilmer, Texas. After Stevens Trucking complained, the trailer was returned to OKC 1 on July 17, 2021, where Stevens Trucking picked it up.

39. On or about June 22, 2021, Stevens Trucking delivered its trailer 53740 with freight from one of its customers to Defendants' OKC1 facility. The trailer bore the distinctive and conspicuous mark of "Stevens Trucking." The trailer was decoupled from the Stevens Trucking tractor and left for unloading by Defendants and subsequent pickup by a Stevens Trucking tractor.

**40.** Upon information and belief, Defendants intentionally loaded trailer 53740 and directed a third-party motor carrier to utilize the trailer even though Defendants had no permission from Stevens Trucking or authority to do so and the third-party motor carrier also did not have permission from Stevens Trucking or authority to do so. Upon information and belief, trailer 53740 was taken with freight from OKC1 to Defendants' DFW6 facility on June 23, 2021, then to Defendants' DAL@ facility on June 24, 2021, and then to Defendants' FTW6 facility on July 122 2021. These three facilities are in the in the Dallas-Ft. Worth, Texas area. After Stevens Trucking complained, the trailer was returned to OKC 1 on July 17, 2021, where Stevens Trucking picked it up.

### Trailer No. 53253

**41.** On or about June 28, 2021, Stevens Trucking delivered its trailer 53253 with freight from one of its customers to Defendants' OKC1 facility. The trailer bore the distinctive and conspicuous mark of "Stevens Trucking." The trailer was decoupled from the Stevens Trucking tractor and left for unloading by Defendants and subsequent pickup by a Stevens Trucking tractor.

**42.** Upon information and belief, Defendants intentionally loaded trailer 53253 and directed a third–party motor carrier to utilize the trailer even though Defendants had no permission from Stevens Trucking or authority to do so and the third-party motor carrier also did not have permission from Stevens Trucking or authority to do so. The driver of the third-party motor carrier recognized that he did not have the authority to utilize the trailer and informed Stevens Trucking. Stevens Trucking was able to recover this trailer on July 1, 2021.

### Trailer No. 53797

**43.** On or about September 19, 2021, Stevens Trucking delivered its trailer 53797 with freight from one of its customers to Defendants' OKC1 facility. The trailer bore the distinctive and

conspicuous mark of "Stevens Trucking." The trailer was decoupled from the Stevens Trucking tractor and left for unloading by Defendants and subsequent pickup by a Stevens Trucking tractor.

**44.** Upon information and belief, Defendants intentionally loaded trailer 53797 and directed a third-party motor carrier to utilize the trailer even though Defendants had no permission from Stevens Trucking or authority to do so and the third-party motor carrier also did not have permission from Stevens Trucking or authority to do so. Upon information and belief, trailer 53797 then traveled to Albuquerque, New Mexico, to Glorieta, New Mexico, to Colorado Springs, Colorado and then to the Denver, Colorado area. After Stevens Trucking complained about the unauthorized use of its trailer, Defendants reloaded the trailer at its DEN4 facility and had it driven back to OKC1 on or about October 2, 2021. Stevens Trucking was able to recover its trailer from Defendants' OKC1 site on or about October 2, 2021.

### Trailer 53669

**45.** On or about August 15, 2021, Stevens Trucking delivered its trailer 53669 with freight from one of its customers to Defendants' Amazon Fulfillment Center TUL2 facility in Tulsa, Oklahoma. The trailer bore the distinctive and conspicuous mark of "Stevens Trucking." The trailer was decoupled from the Stevens Trucking tractor and left for unloading by Defendants and subsequent pickup by a Stevens Trucking tractor. The trailer had no damage when it was left in Defendants' custody.

**46.** Upon information and belief, Defendants intentionally loaded trailer 53669 and directed a third-party motor carrier to utilize the trailer. Defendants did not have permission to do so, and the third-party motor carrier also did not have permission or authority from Stevens Trucking to do so. Upon information and belief, Defendants had the trailer taken to an Amazon facility, MEM4, in Memphis, Tennessee, and then Defendants stored the empty trailer at an empty

lot approximately 5 miles south of MEM4, which lot was not an Amazon facility and which an Amazon transportation operations manager had previously warned Defendants was not safe. Amazon brought trailer to Stevens Trucking's home office site in El Reno, Oklahoma on or about November 18, 2021. Trailer 53669 was severely damaged when it was returned and cannot be used to move freight until it is repaired.

### Trailer No. U93397

**47.** On November 21, 2021, Stevens Trucking delivered its trailer U93397 with freight from one of its customers to Defendants' OKC 1 facility. The trailer bore the distinctive and conspicuous mark of "Stevens Trucking." The trailer was decoupled from the Stevens Trucking tractor and left for unloading by Defendants and subsequent pickup by a Stevens Trucking tractor.

**48.** Upon information and belief, Defendants intentionally loaded trailer U93397 and intended to use it without permission and authority to do so until they were contacted by Stevens Trucking and one of its customers inquiring about the status of the trailer. Defendants did unload the trailer, and Stevens Trucking was able to reclaim it.

**49.** From the time in January 2021 that Stevens Trucking discovered that Defendants were taking its trailers without permission or authority and using them for their own purpose and that of their parent company, Amazon.com, Inc., Stevens Trucking has repeatedly requested that the Defendants stop such practice. Defendants did not stop and, upon information and belief, have not taken any steps to prevent the unauthorized use of Stevens Trucking's trailers at Defendants' facilities. Two trailers were severely damaged, although Defendants did repair one. Two trailers are missing and may never be recovered.

**50.** As a result of the wrongful conduct of the Defendants described above, Stevens Trucking has been deprived of the ability to utilize its personal property and sustained damage to

its trailer fleet. The ability of Stevens Trucking to serve its customers has been interfered with and hampered during a time of a national trailer shortage and a national supply chain crisis. The national trailer shortage and the supply chain crisis explain Defendants' motivations in committing the intentional tort of conversion or refusing to take steps to prevent the unauthorized use of Stevens Trucking's personal property, its trailers.

## III. CLAIMS

### Claim No. 1 – Conversion
### (All Defendants)

51. Plaintiff re-pleads and incorporates in full paragraphs 1-50 above.

52. Plaintiff is, and at all times relevant was, the owner of the trailers identified herein and that were delivered to Defendants' sites for the sole purposes of Defendants unloading the freight contained in the trailers and holding the trailers for Stevens Trucking to recover after they were unloaded.

53. Defendants intentionally converted the trailers described above for their own use and financial gain, and any other trailers of which Stevens Trucking is currently not aware but which may be discovered. Defendants knew that the trailers were not theirs and that they were without legal right to use them as they did. In so doing, Defendants took the trailers off their sites and deprived Stevens Trucking from having access to them for significant periods of time.

54. Stevens Trucking did not give them actual or apparent permission to use any of these trailers to haul freight.

55. Stevens Trucking has been harmed by Defendants' intentional torts and callous disregard for its rights in an amount not less than $75,000, as to be proven at trial.

56. Defendants continued and repeated conversions of Stevens Trucking's property were done with intent and malice towards the rights of the Stevens Trucking and or with reckless

disregard for the rights of Stevens Trucking. Punitive damages should be assessed against Defendants and awarded to Stevens Trucking in order to punish the Defendant and deter further such conduct.

### Count 2 – Negligence and Gross Negligence
### (All Defendants)

**57.** Plaintiff re-pleads and incorporates in full paragraphs 1-56 above.

**58.** Because of the bailor-bailee relationship created between Stevens Trucking and Defendants, Defendants as the bailee owed to Stevens Trucking duties of care over the trailers.

**59.** As described in the paragraphs above, Defendants negligently breached its duties of care by allowing Stevens Trucking's trailers to be taken off of Defendants property and used by Defendants or others.

**60.** As described in the paragraphs above, Defendants negligently breached its duties of care by not protecting the trailers that have suffered actual physical damage.

**61.** As described in the paragraphs above, because Defendants' acts or omissions were done recklessly and with conscious disregard of their duties to protect Stevens Trucking's property, Defendants acts and omissions constitute gross negligence.

**62.** Stevens Trucking has been harmed by Defendants' negligence and gross negligence in an amount not less than $ 75,000.00, including negligent injury to property, as to be proven at trial.

**63.** Defendants continued and repeated unauthorized use of, and gross negligence in taking care of Stevens Trucking's property were done with intent and malice towards the rights of the Stevens Trucking and or with reckless disregard for the rights of Stevens Trucking. Punitive damages should be assessed against Defendants and awarded to Stevens Trucking in order to punish the Defendant and deter further such conduct.

## Count 3 – Unjust Enrichment
## (All Defendants)

64. Plaintiff re-pleads and incorporates in full paragraphs 1-63 above.

65. Defendants and its owner and affiliates have been enriched by the improper use of Stevens Trucking's trailers.

66. Defendants and its owner and affiliates have been unjustly enriched because the use of Stevens Trailers constitute the intentional tort of conversion or because of the negligence and gross negligence of Defendants.

67. Stevens Trucking requests an accounting of all of the goods moved by the unauthorized use of Stevens Trucking trailers and that all profits of Defendants and its affiliates related to or due to the unauthorized use of Stevens Trucking's trailers be disgorged from Defendants and paid to Stevens Trucking.

68. Furthermore, Plaintiff requests that the Court impress a constructive trust upon all revenue earned by Defendants in connection with the unauthorized use of Plaintiff's trailers, as described herein.

## IV. PRAYER FOR RELIEF

**WHEREFORE**, above premises considered, Plaintiff Stevens Trucking Company prays for judgment in its favor and against Defendants Amazon.com Services LLC, Amazon Logistics, Inc. and Amazon Transportation Services, jointly and severally, in excess of $75,000 and in an amount to be proved at trial ; for disgorgement of all profits earned by Defendants and/or its affiliates related to or due to the unauthorized use of Plaintiff's trailers; that an accounting be performed and, thereafter, the Court impress a constructive trust upon all revenue earned by Defendants in connection with the unauthorized use of Plaintiff's trailers; for all costs and attorney's fees incurred in connection herewith pursuant to 23 O.S. § 64 and 12 O.S. § 940(A), as

well as all other applicable statutes and/or law; for punitive damages pursuant to 23 O.S. § 9.1; pre- and post-judgment interest, as permitted by law; and for any and all further relief deemed just and equitable by the Court.

> Respectfully submitted by:
> **LYTLE SOULÉ & FELTY, P.C.**
>
> _/s/ Michael C. Felty_
>
> Michael C. Felty, OBA #10804
> B. Gore Gaines, OBA # 16500
> Matthew K. Felty, OBA No. 31057
> James E. Tancula, OBA # 34890
> 1200 Robinson Renaissance
> 119 N. Robinson Avenue
> Oklahoma City, OK 73102
> (405) 235-7471 (Telephone)
> (405) 232-3852 (Facsimile)
> felty@lytlesoule.com
> gaines@lytlesoule.com
> mkfelty@lytlesoule.com
> tancula@lytlesoule.com
>
> **ATTORNEYS FOR PLAINTIFF STEVENS TRUCKING CO.**